UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL CAIN,                                    Case No. 13-10525

             Plaintiff,                    Paul D. Borman
v.                                              United States District Judge

FRANK CARROLL, *et al*.,                        Stephanie Dawkins Davis
                                                United States Magistrate Judge

             Defendants.

_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 32)**
**AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 39)**

## I.   PROCEDURAL HISTORY

Plaintiff Darryl Cain, a prisoner currently housed in the Oaks Correctional

Facility, filed a civil rights complaint on February 8, 2013 alleging that defendant

Police Sargent Frank Carroll failed to make a prompt judicial determination of

probable cause while he was in custody in violation of his Fourth, Eighth, and

Fourteenth Amendment rights.  (Dkt. 1).  On February 12, 2013, the District Court

referred all pretrial matters to Magistrate Judge Michael Hluchaniuk, and all

pretrial matters have been subsequently reassigned to the undersigned Magistrate

Judge pursuant to Administrative Order.  (Dkt. 5; *see also* Text-Only Order of

Reassignment dated 1/5/16).

On April 29, 2013, Plaintiff moved to amend the complaint to add the "City

of Detroit" and the "Detroit Police Department" as defendants (Dkt. 12), and on June 10, 2013, this Court granted in part plaintiff's motion to amend, allowing plaintiff to add the "City of Detroit" only as a defendant. (Dkt. 15; 16). The District Court also struck plaintiff's request for a clerk's entry of default. (Dkt. 14). Because the City of Detroit filed a voluntary petition for protection under Chapter 9 of the Bankruptcy Code, on July 31, 2013, Judge Borman entered an order withdrawing reference to Judge Hluchaniuk, staying and administratively closing the case. (Dkt. 20). On October 7, 2013, plaintiff filed a motion for relief from the stay (Dkt. 22), and on February 26, 2015, the District Court reopened the case and determined that the stay then was moot. (Dkt. 23). On February 26, 2015, Judge Borman again referred all pretrial matters to Judge Hluchaniuk. (Dkt. 24).

On October 7, 2015, all defendants filed a motion for summary judgment (Dkt. 32), plaintiff responded (Dkt. 35), and defendants filed a reply (Dkt. 36). On January 7, 2016, all pretrial matters were referred to the undersigned, including defendants' motion for summary judgment. (Dkt. 37). On April 20, 2016, plaintiff filed a motion for summary judgment, raising virtually the identical issues that are already before the court in defendants' motion. (Dkt. 39). Defendants responded on April 21, 2016. (Dkt. 40). The two motions are ready for report and recommendation.

For the reasons that follow, the undersigned recommends **GRANTING** defendants' Motion for Summary Judgment (Dkt. 32), and **DENYING** plaintiff's Motion for Summary Judgment (Dkt. 39).

## II.  FACTUAL BACKGROUND

On June 7, 2010, Sgt. Frank Carroll was assigned to the Detroit Police Department's Commercial Auto Theft Unit, working with the eastside Action Auto Theft Unit Request for Warrant (a.k.a. Operation ACTION) task force which was operating out of the Grosse Point Park Police Department headquarters.  (Dkt. 32-1, Pg ID 184).  On June 7, 2010, at approximately 12:40 PM, Sgt. Carroll was on patrol in an undercover capacity when he observed a gold Saturn in the backyard of a vacant dwelling known as 11908 Wayburn in Detroit. (Dkt. 32-1, Pg ID 195).  A Law Enforcement Information Network ("LEIN") check revealed that the vehicle had been stolen.   (*Id*.)  Sgt. Carroll noticed two black males in front of the vehicle.  (*Id*.)  Sgt. Carroll coordinated with the multi-jurisdictional stolen car task force, ACTION, and marked patrol units from the eastern district to surround the location for investigation and arrest purposes.  (*Id*.)  After all personnel were in position, Sgt. Carroll went into the backyard accompanied by police officers Michael Wilson of the Detroit Police Department ("DPD"), and Steven Belcher of the Harper Woods Police Department.  As Sgt. Carroll and the accompanying police officers announced their presence, hollering "Police!" and ordering the

perpetrators to put their hands in the air and get on the ground, arrestee Denzel Walker fled toward the rear of the yard, jumping the fence in an attempt to escape, but was later arrested. (*Id*.) Sgt. Carroll placed plaintiff under arrest with the assistance of Officer Wilson. (*Id*.)

In the search incident to the arrest, plaintiff was found to have a Saturn car key and two small-caliber bullets in his right front pants pocket that were turned over to Sgt. Carroll's custody. (*Id*.) On Tuesday, June 8, 2010, a six-man photographic line-up was presented to the car-jacked complainant. (*Id*.) The complainant immediately identified the picture of plaintiff as the person who robbed him of his vehicle at gunpoint. (*Id*.) Also, on June 8th at approximately 6:00 PM, Sgt. Carroll interviewed, Cheryl Dudley, the owner of the 1995 Saturn and the mother of the complainant. (*Id*.) Ms. Dudley stated that when she was cleaning out her vehicle, she found a State of Michigan identification card belonging to a woman who was with plaintiff when he stole the car, and that she escaped in his vehicle with plaintiff. (*Id*.)

On Wednesday, June 9, 2010, a felony arrest warrant for plaintiff's arrest was issued by a Magistrate Judge in the 36th District Court in Detroit. (Dkt. 32-6, Pg ID 200-201). The Grosse Pointe Park Police Department offices served as a base of operations for the Operation ACTION team that arrested plaintiff. The investigative and prosecutorial documents for plaintiff originated from the Grosse

4

Pointe Park Police Department, which served as the site for bookings, interviews, and other related activity. Moreover, Grosse Pointe Police Lieutenant James Smith constructed the photographic line-up that was used in the investigation conducted at the DPD's Eastern District offices. The warrant request originated from the Grosse Pointe Park Police Department, as shown on the warrant, which reads in part: "Police Agency / Report No. 82GPP 10-5465."

Defendants indicate that the 36th District Court does not time stamp warrants, but they are sought and issued every day when court is in session. For warrants sought by the DPD, the DPD maintains a warrant verification log where its court officers record the time that a warrant issues. However, because plaintiff's warrant originated out of Grosse Pointe Park, there is no DPD warrant log. Plaintiff was ultimately arraigned on June 10, 2013.

## III.   PARTIES' POSITIONS

### A.   Defendants' Motion for Summary Judgment (Dkt. 32)

#### 1.   Defendants' Argument

In plaintiff's first amended complaint, plaintiff alleges that he was arrested on June 7, 2010, but that it wasn't until June 10, 2010 "more than 48 hours after [his] arrest without a warrant and while [he] remained in custody [that he] was arraigned." Defendants argue that there cannot be a Fourth Amendment violation because, while plaintiff was not arraigned within the 48-hour window of the arrest,

a magistrate judge issued a felony arrest warrant within this time period.  Indeed, the Supreme Court recognizes that "a person arrested without a warrant is entitled to a fair and reliable determination of probable cause and that this determination must be made promptly." *Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991); *see also Gerstein v. Pugh*, 420 U.S. 103 (1975).  Defendants argue that jurisdictions that provide determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirements of *Gerstein*.  *Id.* at 56; *see also Ross v. McKee*, No. 08-12493, 2013 WL 6816618, at *18 (E.D. Mich. Dec. 24, 2013).

Here, defendants say that a warrant was obtained from a magistrate within 48-hours of plaintiff's arrest, thereby satisfying the rule of *Gerstein* and *Riverside*. Defendants argue that plaintiff's claim is incorrectly premised upon the date that he was arraigned, rather than on the date the arrest warrant was issued.   In *Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007), the Sixth Circuit explained that the Michigan statute requiring a warrant be obtained following a warrantless arrest codifies the 48-hour rule established in *Gerstein*.

Defendants also argue that plaintiff cannot establish a *Monell* claim against the City of Detroit.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  In the case at bar, neither Sgt. Carroll nor any other City employee violated plaintiff's constitutional rights.  It is settled law that where a

plaintiff does not suffer a constitutional injury at the hands of a municipal employee, there can be no municipal liability under *Monell*. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Wilson v. Morgan*, 477 F.3d 326 240 (6th Cir. 2007). *Heller* specifically refused to award damages against a municipality based on the actions of its officers where the officer "inflicted no constitutional harm." *Id.* Stated another way, a conclusion that no officer-defendant denies plaintiff of his constitutional rights *a fortiori* defeats a constitutional claim against the municipality. *Scott v. Clay Co., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

Defendants also argue that plaintiff cannot rely upon the City's consent judgment with the Department of Justice regarding certain alleged (former) practices of the DPD to support his claims. (Dkt. 32-1, Pg ID 180). Defendants argue that the Consent Judgment provides that it is enforceable only between the parties and further that the Agreement is not intended to be a vehicle to seek relief against the City. Moreover, assuming that plaintiff could state a claim against the City, defendants argue that plaintiff cannot rely upon the consent decree to establish a private cause of action because the consent decree creates no enforceable third party rights. *See*, *e.g.*, *Hart v. Countrywide Home Loans*, *Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Rosen v. Tenn. Comm'r of Fin. & Admin*, 288 F.3d 918, 930 (6th Cir. 2002).

Defendants finally argue that plaintiff has not stated a claim under the Eighth Amendment.  (Dkt. 32-1, Pg ID 181).  As explained in *Gerstein* and *Riverside* above, it is the Fourth Amendment that secures the right to a prompt probable cause determination.  *See Drogosch v Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (holding that the 4th amendment applies to the period between a warrantless arrest and a probable cause determination).  Plaintiff has not otherwise stated any facts that would support a claim under the Eighth Amendment.

For these reasons, defendants say that plaintiff has failed to state a claim under the Eighth Amendment and defendants are entitled to summary disposition on all other alleged claims.

### 2.    Plaintiff's Response

Plaintiff claims that he was arrested by Sgt. Carroll on June 7, 2010. Although the prosecutor's office recommended the issuance of a warrant on June 8th, the warrant was not signed by a judicial officer until June 9, 2010, and the arraignment did not occur until June 10, 2010, more than 48-hours beyond his initial warrantless arrest.  (Dkt. 35).  Plaintiff contends that these facts give rise to a violation of his rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff specifically contends that a felony warrant was not issued and obtained within 48-hours of plaintiff's warrantless arrest.  With respect to the Eighth Amendment claim, plaintiff claims that it is cruel and unusual punishment to be

8

denied due process of law.  That said, however, plaintiff indicates that if the court determines that there are no facts to support his Eighth Amendment claim, plaintiff asks that the facts be considered under the Fourth and Fourteenth Amendments.

Plaintiff specifically argues that Sgt. Carroll violated his right to a prompt judicial determination of probable cause because he was not brought before a magistrate within 48-hours for arraignment after his warrantless arrest.  Plaintiff says that in order to satisfy the promptness requirement, a jurisdiction that chooses to combine a probable cause determination with other pre-trial proceedings must do so as soon as is reasonably feasible, but in no event later than 48-hours after an arrest. *See Riverside v. McLaughlin*, 500 U.S. 44, 45 (1991).

Plaintiff next argues that he can establish a § 1983 claim against the City of Detroit under *Monell*.  Plaintiff claims that he suffered a constitutional injury at the hands of a municipal employee, Sgt. Carroll.  Plaintiff argues that the City of Detroit is liable for: 1) the existence of a clear and persistent pattern of violating federal rights; 2) notice or constructive notice on the part of defendants; 3) defendants' tacit approval of the unconstitutional conduct such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and 4) defendants' custom was the "moving force" or direct causal link for the constitutional violation. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).

9

With respect to the first element, plaintiff avers that the City of Detroit is out of compliance with its consent decree that it entered into with the United States Department of Justice ("DOJ") in 2003.[1] Under the consent decree, defendants admitted that these same prolonged detentions violate the constitutional rights of detainees. Plaintiff says that more than a decade has passed since entry of the consent decree, yet things have not improved. In fact, according to plaintiff, the consent monitor continues to report significant numbers of detentions in excess of 48 hours without a probable cause determination. Regarding the second element, plaintiff says that defendants had actual notice of its violations per the consent decree. Further, defendants were put on notice as they received periodic reports from the consent decree monitor, relevant media stories, and were informed by the filings of numerous criminal and civil cases that alleged the unlawful practice and pattern of constitutional violations. Third, plaintiff argues that defendants are deliberately indifferent because for more than a decade, defendant was on actual notice of the significant number of detentions exceeding 48-hours without a probable case determination after an arrest without a warrant. By not curtailing these violations, even in the face of its obligations under a consent decree, and not punishing those responsible, defendants have

---

[1] The Consent Decree to which Plaintiff refers is presumably the Consent Judgement between the City of Detroit and the United States entered on July 18, 2003. (Case No. 03-cv-72258). The Consent Judgement was terminated by entry of a Stipulated Transition Agreement between the parties on August 25, 2014.

effectively ratified their actions.  Fourth, plaintiff says that defendant's inaction was the moving force for the constitutional violation.  In other words, the City's custom or policy led to the complained of injury.  *See Powers*, 501 F.3d at 607. Plaintiff claims that but for the City's indifference, significant numbers of arraignments and probable cause determinations would not have been delayed past 48 hours.  Further, plaintiff argues that defendant's deliberate indifference to the delay of a probable cause determination beyond 48-hours made it reasonably foreseeable that a 1983 violation would occur.

In addition, plaintiff avers that Sgt. Carroll's actions violate Mich. Comp. Laws § 764.13, which states: "A peace officer who has arrested a person for an offense without a warrant shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested."  Mich. Comp. Laws § 764.13.  Plaintiff also alleges that Sgt. Carroll violated a similarly worded Michigan statue, Mich. Comp. Laws § 764.26, which provides that "[e]very person charged with a felony shall, without unnecessary delay after his arrest, be taken before a magistrate or other judicial officer and, after being informed as to his rights, shall be given an opportunity publicly to make any statement and answer any questions regarding the charge that he may desire to answer."  Mich. Comp. Laws § 764.26.

11

3.    Defendants' Reply

Defendants say that plaintiff does not dispute that an impartial magistrate issued a felony warrant within 48-hours of plaintiff's arrest.  There is no evidence of any undue delay in seeking that warrant.  Defendants therefore contend that the timely issuance of that warrant bars all of plaintiff's claims, as a matter of law. Specifically, the timely issuance of the warrant satisfies the law as set forth in *Gerstein* and *Riverside*, *supra*.  According to defendants, plaintiff is simply incorrect that the law requires that he be "arraigned" within 48-hours of his arrest; in fact, no case law supports that proposition.  In Michigan, an arraignment is held *after* a warrant has been issued.  At the arraignment, no probable cause determination is made, rather the person is informed of the charges and a bail determination is made.  The next probable cause determination is made at the preliminary examination.  Defendants also point out that plaintiff has no constitutional right to be present when the warrant for his arrest is obtained from a magistrate.  Plaintiff cites two Michigan statutes (Mich. Comp. Laws § 764.26 and Mich. Comp. Laws § 764.13) which require that a person charged with a crime be promptly brought before a judicial officer, be informed of his rights, and given an opportunity to make a statement of answer questions, i.e., that the person be arraigned. But probable cause is not determined at an arraignment -- that is done when the magistrate issues the warrant.  Moreover, the cited state laws do not

12

create a right secured by the U.S. Constitution.

     B.    <u>Plaintiff's Motion for Summary Judgment (Dkt. 39)</u>

On April 20, 2016, plaintiff filed a motion for summary judgment wherein he says that defendants violated his Fourth, Eighth and Fourteenth Amendment rights when they failed to afford him a prompt judicial review of probable cause within 48-hours of his warrantless arrest.  (Dkt. 39).  In addition, plaintiff argues that Sgt. Carroll violated MCL §§  764.13 and 764.26 for failing to promptly take plaintiff before a magistrate.  Plaintiff also claims that the City of Detroit is liable under a theory of municipal liability under *Monell*.  The claims outlined in plaintiff's motion for summary judgment are essentially a re-packaging of the arguments he makes in response to defendant's motion for summary judgment.  As such, the court will address the two motions together.

## IV.   LEGAL ANALYSIS

     A.    <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282, 184 L. Ed. 2d 150 (2012). The standard for determining whether summary

judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).  A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  Once the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of

evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).

The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET. AL. MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed.2000)); *see Surles v. Andison*,

15

678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.3d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999).

    B.    <u>Legal Arguments</u>

        1.    Probable Cause Hearing

Plaintiff contends that Detroit Police Sgt. Frank Carroll violated his right to receive a prompt probable cause determination as required by *Gerstein* following his warrantless arrest. The Supreme Court "recognized in *Gerstein* that a person arrested without a warrant is entitled to a fair and reliable determination of probable cause and that this determination must be made promptly." *Riverside v. McLaughlin*, 500 U.S. 44, 55, 111 S. Ct. 1661, 113 L. Ed. 2d 49 (1991). "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id*. at 56; *see also Ross v. McKee,* No. 08-12493, 2013 WL 6816618, at *18 (E.D. Mich. Dec. 24, 2013).

In *Peet v. City of Detroit*, 502 F.3d 557, 569 (2007), the Sixth Circuit acknowledged that MCL 764.1c codified the Supreme Court's holding in *Gerstein*, that when an individual is arrested without a warrant, an impartial judge must

make a "fair and reliable determination of probable cause." *Id.* (quoting *Gerstein*,

420 U.S. at 112).  The Sixth Circuit continued:

> This requirement implements the "Fourth Amendment's
> protection against unfounded invasions of liberty and
> privacy." *Id.* at 112, 95 S. Ct. 854. The probable cause
> determination must generally be made within 48 hours
> after the arrest. *See County of Riverside v. McLaughlin*,
> 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49
> (1991). Unless the judge finds that probable cause
> existed for the arrest, the suspect must be released. The
> relevant question is whether, at the moment of the arrest,
> probable cause existed to believe that the arrestee had
> committed a crime. *See Beck v. Ohio*, 379 U.S. 89, 91, 85
> S. Ct. 223, 13 L. Ed. 2d 142 (1964).

*Peet*, 502 F.3d at 569.

In a second case reviewed by the Sixth Circuit, a magistrate judge

determined that there was probable cause for an arrest and signed a warrant for the

arrestee's detention one day following his warrantless arrest pursuant to MCL

764.1c.  *Sanders v. Detroit Police Department,* 490 Fed. Appx. 771 (6th Cir.

2012).  The *Sanders* Court determined that the arrestee was being held pursuant to

a valid warrant and therefore was not "constitutionally entitled to a separate

judicial determination" of probable cause.  *Id.* (quoting *Baker v. McCollan*, 443

U.S. 137, 143, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  Indeed, as the Sixth

Circuit concluded, "delays are inevitable and, generally, determinations of

probable cause that occur within 48 hours will not violate *Gerstein's* promptness

requirement."  *Sanders,* 490 Fed. Appx. at *774 (6th Cir. Aug. 3, 2012).

17

Nevertheless, the *Sanders* Court determined that the arrestee received a probable cause hearing either the very next day when he was arraigned, or ten days later when it was determined that sufficient probable cause existed to bind him over for trial. *Id.* "Accordingly, Sanders' right to receive a prompt determination of probable cause was not violated." *Id.*

Plaintiff claims that Sgt. Carroll arrested him on June 7, 2010, but that defendants did not obtain a felony warrant within the required 48-hours. (Dkt. 35, Pg ID 220). He also contends that he was not arraigned until a day after the warrant issued. (*Id*. at Pg ID 220). Yet, plaintiff has provided no evidence that Sgt. Carroll in fact, failed to obtain a felony warrant within the required 48-hours; rather plaintiff merely makes the conclusory statement that defendants did not act within the necessary time-frame. On the other hand, Sgt. Carroll has provided evidence that supports his position that a felony warrant was obtained from a magistrate judge pursuant to MCL 764.1c[2] within 48 hours of plaintiff's arrest,

---

[2] Mich. Comp. Laws § 764.1c provides:

Sec. 1c. (1) If the accused is in custody upon an arrest without a warrant, a magistrate, upon finding reasonable cause as provided in section 1a of this chapter, shall do either of the following:

(a) Issue a warrant as provided in section 1b of this chapter.

(b) Endorse upon the complaint a finding of reasonable cause and a direction to take the accused before a magistrate of the judicial district in which the offense is

thereby satisfying the requirement of *Gerstein* and *Riverside*.  To wit: On Monday, June 7, 2010 at approximately 12:40 PM, Sgt. Carroll arrested plaintiff.  (Dkt. 32-3, Pg ID 185, Arrest Report, dated June 7, 2010).  The next day - June 8, 2010, based on plaintiff's confession of taking parts from a stolen Ford Explorer at the site of the arrest, and being picked out of a photographic line-up as the person who had robbed the complainant at gunpoint, a Wayne County Prosecutor recommended that a felony warrant be issued for plaintiff.  (Dkt. 32-4, Pg ID 194-197, Request for Warrant Recommendation).  Then on Wednesday, June 9, 2010, a magistrate of the 36th District Court in Detroit, Michigan issued a felony warrant for plaintiff's arrest.  (Dkt. 32-6, Pg ID 200-201).   The warrant is clearly dated near the magistrate's signature as June 9, 2010.  *Id.*

Sergeant Carroll indicates that the 36th District Court does not time-stamp warrants, but they are sought and issued every day when court is in session.  For warrants that are sought by the DPD, the DPD maintains a warrant verification log where its court officers record the time that a warrant issues.  Sgt. Carroll offers as evidence the warrant verification log recording the warrants that were issued between 8:00 and 11:00 AM on Wednesday, June 9, 2010.  (Dkt. 32-7, Pg ID 202-205).  However, because plaintiff's warrant originated out of Grosse Pointe Park,

---

charged to have been committed.

(2) As endorsed pursuant to subsection (1)(b), the complaint shall constitute both a complaint and warrant.

there is no DPD warrant log for plaintiff's warrant.  Nevertheless, plaintiff has

presented no evidence to support his conclusory statement that his felony warrant

was not issued within the requisite 48-hour time period.  Indeed, it is well-settled

that plaintiff is not able to rest on the mere allegations of his pleadings to create a

genuine issue of material fact.  Fed. R. Civ. P. 56(e)(2), (3); *see Everson*, 556 F.3d

at 496.  Moreover, the evidence presented by Sgt. Carroll shows that plaintiff was

arrested on June 7th at 12:40 PM, a 36th District Court magistrate issued a felony

warrant on June 9th between the hours of 8:00 AM and 11:00 AM, and plaintiff

acknowledges that he was arraigned the following day on June 10, thus providing

ample evidence that a fair and reasonable determination of probable cause had

been made.[3]

## 2.   *Monell* Liability

Plaintiff alleges that the City of Detroit is liable under *Monell* because it is

engaging in an unconstitutional policy of detaining arrestees without a warrant in

excess of 48-hours in violation *Gerstein*.  It is well-settled law that a governmental

---

[3]  Though perhaps alluded to, plaintiff does not develop a secondary argument regarding whether liability exists independent of the probable cause determination for whether defendants violated his constitutional rights by delaying his arraignment until June 10, three days after his warrantless arrest, but only one day after the District Court issued a felony warrant. In this court, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *See McPherson v. Kelsey,* 125, F.3d a 989, 995-96 (6th Cir. 1997).  Moreover, the Court's analysis under *Heck v. Humphrey,* 512 U.S. 477 (1994), renders all of  plaintiff's challenges moot.  *Infra* at p. 23.

entity, such as the City of Detroit, cannot be held vicariously liable under 42 U.S.C. § 1983 for the acts or omissions of its employees. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (plaintiff cannot premise the liability of a corporate defendant on the theory of *respondeat superior*). Rather, to hold the City liable under § 1983, plaintiff is required to come forward with evidence that an unconstitutional policy, custom or practice was the proximate cause of his injuries. *Monell*, 436 U.S. at 694; *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993) (recognizing that a private corporation may be held liable under § 1983 when acting under color of law). And, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). "Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy." *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 Fed. Appx. 621, 636 (6th Cir. 2012) (internal quotation marks omitted).

As discussed above, plaintiff has failed to sufficiently allege that his constitutional rights were violated. Where plaintiff has not properly alleged that there was an underlying constitutional violation, there is simply no basis for

claiming that the governmental entity had an unconstitutional policy. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Nallani v. Wayne County*, No. 14-12918, 2015 WL 6795945 (E.D. Mich. Nov. 6, 2015) (dismissing defendant Wayne County because plaintiff failed to establish a constitutional violation by the individual defendants)).

### 3.    Eighth Amendment

Plaintiff argues that the defendants violated his Eighth Amendment rights as a result of their alleged unconstitutional delay in obtaining a prompt judicial determination of probable cause.  As noted in *Gerstein* and *Riverside*, however, the Fourth Amendment secures the right to a prompt probable cause determination.[4]  *See Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (holding that the 4th amendment, not the 14th Amendment, applies to the period between a warrantless arrest and a probable cause determination).  The Eighth Amendment is not implicated in such a claim.  For this reason, plaintiff's Eighth

---

[4]  The undersigned notes that plaintiff acknowledges that his Eighth Amendment claim is improper, but asks the Court to instead consider liability under the Fourth and Fourteenth Amendments.  As noted *supra*, the Court has considered plaintiff's claim under the appropriate constitutional construct, the Fourth Amendment, and has determined that Sgt. Carroll did not violate plaintiff's constitutional rights.

Amendment claim should be dismissed.

### 4.    State Law Claims

To the extent that plaintiff is seeking relief under Mich. Comp. Laws § 764.13 and Mich. Comp. Laws § 764.26, "[s]upplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). The undersigned concludes that there is no reason in this case to depart from that general rule, and recommends that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims and that these claims should be dismissed without prejudice.

### 5.    *Heck v. Humphrey*

Finally, although not briefed by the parties, the undersigned concludes that plaintiff's claims constitute an impermissible collateral attack on the validity of his

state court conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). To state a

cognizable claim for relief for an allegedly unconstitutional conviction under §

1983, a plaintiff must prove the conviction has been reversed on direct appeal,

expunged or otherwise invalidated. *Heck,* 512 U.S. at 486-487. This prerequisite

to § 1983 relief applies as much to persons no longer incarcerated as it does to

prisoners in custody. *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995).  On

October 27, 2010, a jury convicted defendant of car jacking, unlawfully driving

away from a motor vehicle, two counts of receiving and concealing a stolen motor

vehicle, being a felon in possession of a firearm, and possessing a firearm during

the commission of a felony.  Because plaintiff's conviction has not been

successfully invalidated, his § 1983 claims for relief from that conviction are

barred.

## V.    RECOMMENDATION

For all of the foregoing reasons, the undersigned recommends **GRANTING**

defendants' Motion for Summary Judgment (Dkt. 32), and **DENYING** plaintiff's

Motion for Summary Judgment (Dkt. 39).

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local

Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 5, 2016                   s/Stephanie Dawkins Davis
                                       United States Magistrate Judge

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 5, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Darryl Cain, #351791, Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, MI 49660</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov