UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL CAIN, | Case No. 2:13-cv-10525 |
| *Plaintiff,* | Sean F. Cox<br>United States District Judge |
| v. | Patricia T. Morris<br>United States Magistrate Judge |
| FRANK CARROLL and CITY OF DETROIT, | |
| *Defendants.* | |
| _____/ | |

### REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (ECF No. 163)

**I.    RECOMMENDATION**

For the reasons set forth below, **I RECOMMEND** that the Court **GRANT** Plaintiff's motion to enforce a settlement agreement (ECF No. 163) and **ORDER** attorney Ronnie E. Cromer, Jr. to disperse the sum of $2,062.50 to Plaintiff.

**II.    REPORT**

    **A.    Background**

Plaintiff filed the complaint in this *pro se* prisoner civil rights action on February 8, 2013. (ECF No. 1). On June 24, 2013, Plaintiff amended his complaint, with leave from the Court. (ECF No. 16). His allegations stem from a warrantless arrest conducted by Detroit Police Department officers on June 7, 2010. Plaintiff was arrested for robbing a person of his vehicle at gunpoint. (ECF No. 16). Plaintiff

1

alleges that he was not brought before a 36th District Court magistrate for a probable cause hearing until June 10, 2010, more than 48 hours after his arrest, in violation of the U.S. Constitution. (ECF No. 16, PageID.50).

On July 10, 2023, Plaintiff filed a motion to enforce a different settlement agreement than the one at issue in the instant motion. (ECF No. 105). The Court denied that motion because it found that no enforceable settlement had been reached. Specifically, it found that defense counsel's response to Plaintiff's settlement offer was a counteroffer rather than an acceptance of Plaintiff's offer. (ECF No. 109).

Later in the case's history, the parties were able to reach a settlement. Because the City of Detroit had been involved in a bankruptcy action, the amount of any possible settlement award was limited. Despite this complication, the parties entered a stipulation between the City of Detroit and Plaintiff, resolving Bankruptcy Claim 799 by "allowing Claim 799 to be liquidated as a Class 15 Convenience Claim." (ECF No. 165, PageID.1414). The stipulation also provided that Plaintiff "shall receive cash in the amount of $6,250.00." (ECF No. 165, PageID.1415). In the stipulation, the parties requested that the Court enter an Order "in substantially the same form as the order attached as Exhibit 1." (*Id.*) The Court did so and also entered a Stipulated Dismissal Order that dismissed the case "with prejudice and without costs or fees to any party." (ECF No. 161, PageID.1367).

The instant motion to enforce a settlement agreement is based on Plaintiff's

2

frustration with his attorney keeping one-third of the agreed upon settlement amount as attorney fees and Plaintiff's alleged lack of notice of the same. (ECF No. 163). Plaintiff's counsel, Ronnie E. Cromer, Jr. of the Cromer Law Group, PLLC, was appointed by the Court as pro bono counsel on May 24, 2023. (ECF No. 163, PageID.1392).

According to emails attached to Defendants' response, counsel for Plaintiff indicated that the settlement check should be made payable to "Cordia L. Oglesby ([Plaintiff's] designated payee) and the Cromer Law Group PLLC." (ECF No. 165, PageID.1420). A check was issued from the City of Detroit to Ms. Oglesby and the Cromer Law Group in the amount of $6,250 and then mailed to the Cromer Law Group on February 16, 2024. (ECF No. 165, PageID.1422–23).

After receiving the check, Plaintiff's counsel sent a check to Plaintiff, through his designated payee, for $4,187.50. This amount was reached by subtracting one-third of the settlement amount ($2,062.50) for the payment of attorney fees. (ECF No. 163, PageID.1391, 1393).

Plaintiff alleges that he "did not agree" to any amount of attorney fees being deducted from his settlement award. (ECF No. 163, PageID.1380–81). The settlement agreement that was memorialized in a stipulation and order to dismiss the case contains no provision regrading attorney fees. (ECF No. 165, PageID.1398). The record similarly fails to show that any court determination of appropriate or

reasonable attorney fees was made under Section 1988(b).[1]

Defendants take issue with Plaintiff filing a purported settlement agreement document (ECF No. 162) that Plaintiff did not sign and that they allege is clearly altered and fraudulent (ECF No. 165, PageID.1398). Defendants argue that this fraudulent settlement agreement should not be enforced. I do not rely on this alleged fraudulent and recently submitted document for its findings, so it is of no consequence.

Pursuant to the Court's September 26, 2024 Order, Plaintiff's counsel, Ronnie E. Cromer, Jr., filed an affidavit on October 8, 2024. In the affidavit, Cromer declared as follows: "no signed written attorney fee agreement exists between

---

[1] Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of" 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" This section is limited by 42 U.S.C. § 1997e(d), which provides that "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized . . . such fees shall not be awarded, except" if both "(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988" and either "(B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." The statute further provides that "[w]henever a monetary judgment is awarded . . . a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). Finally, the statute cautions that "[n]othing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title." 42 U.S.C. § 1997e(d)(4).

4

myself and [Plaintiff]. I proceeded based on a verbal agreement, which is permitted under Michigan law and MRPC 1.5(b)." (ECF No. 173, PageID.1450). Cromer says that he and Plaintiff verbally agreed to a one-third contingency fee agreement during their first meeting and that the agreement was "reaffirmed during settlement negotiations." (ECF No. 173, PageID.1448). Cromer also states that "[a]lthough [he] provided [Plaintiff] with a written contingency fee agreement, [he] did not receive a signed copy back from [Plaintiff], and [he] failed to follow up due to oversight" but that he "proceeded under the good faith belief that [Plaintiff] had verbally agreed to the contingency arrangement[.]" (ECF No. 173, PageID.1448).

### B. Legal Standard

This Court "may enforce a settlement agreement if (1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement; (2) determines 'that agreement has been reached on all material terms'; and (3) the 'agreement is clear and unambiguous, and no issue of fact is present.' " *Ivy Room, LLC v. City of Hazel Park*, No. 21-10910, 2022 WL 5320112, at *3 (E.D. Mich. Sept. 6, 2022) (internal citations omitted). The Sixth Circuit has "long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing." *Bostick Foundry Co. v. Lindberg*, 797 F.3d 280, 282–83 (6th Cir. 1986) (collecting cases).

5

## C. Analysis

In the instant case, I suggest that an agreement was reached on all material terms and that the terms did not include Cromer taking a one-third contingency fee from the agreed upon settlement amount of $6.250.

First, the record does not include any mention of attorney fees being taken out of the settlement amount to compensate pro bono counsel. The stipulation between the City of Detroit and Plaintiff, resolving Bankruptcy Claim 799 provided only that Plaintiff "shall receive cash in the amount of $6,250.00." (ECF No. 165, PageID.1415). The settlement agreement that was memorialized in a stipulation and order to dismiss the case contains no provision regarding attorney fees. (ECF No. 165, PageID.1398).

Although Cromer states that he and Plaintiff verbally agreed to a one-third contingency fee agreement during their first meeting and that the agreement was "reaffirmed during settlement negotiations," he also acknowledges that "[a]lthough [he] provided [Plaintiff] with a written contingency fee agreement, [he] did not receive a signed copy back from [Plaintiff][.]" (ECF No. 173, PageID.1448). Plaintiff's failure to sign and return such an agreement furthers the conclusion that Plaintiff did not agree to this term. Moreover, Plaintiff alleges that he "did not agree" to any amount of attorney fees being deducted from his settlement award. (ECF No. 163, PageID.1380–81).

Counsel's reliance on Michigan Rule of Professional Conduct ("MRPC") 1.5(b) for the contention that verbal contingency fee agreements are permissible appears to be misplaced.  MRPC 1.5(b) provides that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."  Counsel reads this as allowing verbal agreements since the rule only expresses a preference for in-writing communication. However, the next subsection—MRPC 1.5(c)—explicitly states that "[a] contingent-fee agreement shall be in writing and shall state the method by which the fee is to be determined." Therefore, the alleged verbal contingent-fee agreement would be inappropriate under the rules of ethics, even if it could be shown to exist.

Accordingly, I recommend that the Court find that the settlement reached between the parties was clear, that it did not authorize Cromer to receive a one-third contingent-fee for his pro bono work, and that it should be enforced as written.  This result is bolstered by the observations of another district court that noted contingent-fee agreements are unusual in situations where counsel is appointed by a court as pro bono counsel.  *Anderson v. Osborne*, No. 17-cv-539, 2021 WL 2310508, n.3 (S.D.N.Y. June 7, 2021) ("Indeed, in ten years on the bench, this Court has appointed pro bono counsel in numerous civil rights cases, and counsel have either worked for free or been satisfied with the recovery of statutory attorney's fees in the event their

client prevailed . . . this is the first time such pro bono counsel entered into a contingency fee arrangement with the client he or she volunteered to represent.").

### D. Conclusion

For these reasons, **I RECOMMEND** that the Court **GRANT** Plaintiff's motion to enforce a settlement agreement (ECF No. 163) and **ORDER** attorney Ronnie E. Cromer, Jr. to disperse the sum of $2,062.50 to Plaintiff.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is

to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 23, 2024                          s/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge